UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| WILLIAM JOSEPH METZGER, II, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 4:19-cv-02375-PLC |
| WESLEY C. DALTON, et al., | ) | |
| Defendants. | ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on the motion of plaintiff William Joseph Metzger, II for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the filing fee, and will waive the initial partial filing fee. *See* 28 U.S.C. § 1915(b)(4). Additionally, for the reasons discussed below, this action will be dismissed.

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of the Court each time the amount in the prisoner's account exceeds $10.00,

until the filing fee is fully paid. *Id*.

In support of his motion, plaintiff has submitted a certified inmate account statement. (Docket No. 3). The statement shows that over a six-month period, plaintiff made deposits totaling only $2.95. As a result, the Court will not require plaintiff to pay an initial partial filing fee at this time. *See* 28 U.S.C. § 1915(b)(4) (stating that a prisoner shall not be prohibited from bringing a civil action for the reason the prisoner has "no means by which to pay the initial partial filing fee").

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the

plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a pro se litigant currently incarcerated at the Central Florida Reception Center in Orlando, Florida. He brings this action pursuant to 42 U.S.C. § 1983. The complaint names Judge Wesley C. Dalton, Prosecutor Michael Wright, Judge Keith M. Sutherland, and Prosecutor Jennifer Bartlett as defendants. (Docket No. 1 at 2-3). The defendants are sued in their official capacities only.

Plaintiff's "Statement of Claim" is contained in a 43-page attachment to the complaint. His claim arises from his contention that he was deprived of his right to a probation revocation hearing before the expiration of his probation on July 6, 2010, and that he was maintained on probation after that date due to a detainer. (Docket No. 1-1 at 1).

Plaintiff states that on September 1, 2004, he was charged with leaving the scene of a motor vehicle accident – injury, property damage or second offense, a felony.[1] (Docket No. 1-1 at 13). He explains that while driving on I-70, "a very fast speeding 18-wheeler" forced him off the road.

---

[1] The case is *State of Missouri v. Metzger*, No. 04A8-CR01279-01 (12th Cir., Warren County).

Claiming that his cell phone battery was dead, that he was shaken, and that he did not know what to do, plaintiff drove off rather than remain at the scene. Eventually, plaintiff was picked up on a warrant in Illinois and extradited back to Warren County. (Docket No. 1-1 at 14).

Plaintiff was released on a recognizance bond. He went to St. Petersburg, Florida, and missed his scheduled court appearance. (Docket No. 1-1 at 15). A warrant was issued. Plaintiff was picked up in Florida and extradited to Warren County. (Docket No. 1-1 at 16).

Plaintiff went to court on July 6, 2005, having not yet spoken to an attorney. He pled guilty and was sentenced to four years' imprisonment. (Docket No. 1-1 at 17). The sentence was suspended, and he was given five years of supervised probation. (Docket No. 1-1 at 18). Plaintiff states that his waiver of counsel and his guilty plea was made under duress, and that he was deprived of his right to counsel, as well as his right to prepare a defense. (Docket No. 1-1 at 17).

After his second meeting with a probation officer, plaintiff used his SSI check to purchase "a very fair[,] nice car," and returned to Florida. (Docket No. 1-1 at 18). At some point thereafter, as plaintiff was exiting I-10 on his way to Highway 275 in Florida, he was pulled over by a state trooper. (Docket No. 1-1 at 18-19). He was arrested for D.W.I. and driving on a suspended license. (Docket No. 1-1 at 19). He was taken to the Alachua County Jail in Gainesville, Florida.

Prosecutor Wright filed a motion for probation revocation on October 19, 2005. A warrant was issued for his arrest on October 31, 2005, and a detainer placed on him on February 7, 2006. (Docket No. 1-1 at 19-20). While awaiting disposition of his charges in Alachua County, plaintiff filed "several" motions with the Missouri circuit court. (Docket No. 1-1 at 20). His first motion was a "motion for modification of sentence" filed on April 17, 2006. The motion was denied by Judge Sutherland. Plaintiff also filed a motion for "notice of change of address" and a motion for "notice of [inquiry]."

In July 2006, plaintiff was sentenced to serve two years in the Florida Department of Corrections. During this time period, plaintiff filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Missouri.[2] (Docket No. 1-1 at 20-21). The petition was ultimately denied.

On July 1, 2007, plaintiff finished his Florida sentence. (Docket No. 1-1 at 21). Upon his release, he was taken to the Washington County Jail in Chipley, Florida, to be held pending extradition back to Missouri. He was in the Washington County Jail approximately twenty days before U.S. Marshals came to transport him. (Docket No. 1-1 at 22). According to plaintiff, the U.S. Marshals refused to transport because he is HIV positive. (Docket No. 1-1 at 7-8). Thereafter, plaintiff states that he was released, and then "taken to the county line" by a sheriff's deputy and left at a gas station approximately one-hundred miles from where he "was needing to go." (Docket No. 1-1 at 22). He states this situation arose because he was deprived of his right to be extradited back to Missouri. Nevertheless, plaintiff made it back to St. Petersburg, where he apparently spent the next several years. (Docket No. 1-1 at 23).

While still in St. Petersburg, plaintiff was charged with petit theft in the Pinellas County Circuit Court. He was found guilty. On December 18, 2017, he was sentenced to twenty-four months in the Florida Department of Corrections. Plaintiff states that while serving this sentence, he was "fully stressed out" about his Missouri case. (Docket No. 1-1 at 24).

Upon his release from the Graceville Correctional Facility in Graceville, Florida, plaintiff states he was entitled to a one-way Greyhound bus ticket and a $50 debit card. (Docket No. 1-1 at 24-25). Plaintiff asked his classification officer to provide him with a bus ticket that would get him close to the Warren County Courthouse in Warrenton, Missouri. (Docket No. 1-1 at 25).

---

[2] The case is *Metzger v. Nixon*, No. 4:06-cv-999-HEA (E.D. Mo. June 29, 2006).

On November 5, 2018, plaintiff states that he walked into the Warren County Courthouse and turned himself in. He notes that it had been "nearly a full" thirteen years since the placement of the detainer by Prosecutor Wright. (Docket No. 1-1 at 25-26).

Plaintiff states that while in Graceville Correctional Facility, he filed several motions in the Pinellas County Circuit Court "to order an interstate detainer compact transfer." (Docket No. 1-1 at 26). Those motions, however, were all denied. He also filed a request for an interstate detainer compact transfer with the Florida Department of Corrections.

On December 26, 2017, plaintiff filed a motion for an interstate compact transfer from Florida in the Warren County Circuit Court. (Docket No. 1-1 at 27). Rather than being granted, plaintiff states that Judge Dalton scheduled the matter for a case review. (Docket No. 1-1 at 28). Plaintiff further states that *State ex rel. Zimmerman v. Dolan*, 514 S.W.3d 603 (Mo. 2017) compelled the release of his detainer. (Docket No. 1-1 at 28-29). He claims that based on *Zimmerman*, the circuit court had no authority except to fully discharge his probation. (Docket No. 1-1 at 29). However, rather than being discharged, Judge Dalton kept plaintiff's case in warrant status. (Docket No. 1-1 at 30). This forced plaintiff to turn himself in. (Docket No. 1-1 at 31).

Upon turning himself in, plaintiff was appointed counsel. (Docket No. 1-1 at 32). According to review of plaintiff's case on Case.net, plaintiff filed a motion for discharge on January 17, 2019. His probation was discharged on January 31, 2019.

Plaintiff states that upon his release from the Warren County Jail on January 31, 2019, he suffered pain in his feet, hands, and fingers because of the weather. (Docket No. 1-1 at 33).

Plaintiff alleges that Judge Dalton and Prosecutor Wright violated his Fifth, Sixth, and Fourteenth Amendment rights by depriving him of a revocation hearing before the expiration of his probation, thereby keeping him on probation after the time it was set to expire. (Docket No. 1-

1 at 33-34). He further alleges that he suffered "mental duress" throughout the past thirteen to fourteen years. (Docket No. 1-1 at 34).

In addition to his emotional injuries, plaintiff alleges suffering pain and numbness in his hands and feet upon his release from jail. (Docket No. 1-1 at 35). He states that the Warren County Sheriff's Office is responsible for this. Furthermore, plaintiff claims that he was deprived of HIV medications while in the Warren County Jail for eighty-eight days. (Docket No. 1-1 at 35-36). He also asserts that he was deprived of any assistance in getting temporary shelter before his discharge. (Docket No. 1-1 at 36). Instead, he "was fully thrown out, released, and discharged to the streets," without much clothing, and without any food or money. Finally, plaintiff states that the detainer placed on him deprived him of his "full eligibility" to receive Social Security benefits. (Docket No. 1-1 at 37).

Plaintiff seeks to recover monetary losses, including a one-way Greyhound ticket and $100 he was supposed to receive upon release from jail, and $69,100 in Social Security benefits he did not receive. (Docket No. 1-1 at 40-41). He also seeks damages for his mental health and medical issues. (Docket No. 1-1 at 42). Plaintiff notes his willingness to settle for a minimum of $100,000, after payment of all attorney's fees.

**Discussion**

Plaintiff is a pro se litigant who brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his civil rights by Judge Dalton, Prosecutor Wright, Judge Sutherland, and Prosecutor Bartlett. Specifically, he asserts that he was deprived of his right to a probation revocation hearing before the expiration of his probation on July 6, 2010. This occurred due to a detainer filed against him when he was arrested in Florida. Because the State of Missouri did not extradite him, plaintiff states that he was required to turn himself in, even though he contends that his probation should

have been discharged. For the reasons discussed below, plaintiff's complaint will be dismissed.

### A. Claims Against Judge Sutherland and Judge Dalton

Plaintiff's claims against Judge Sutherland and Judge Dalton must be dismissed based on judicial immunity. In general, a judge is immune from a suit for money damages. *Mireles v. Waco*, 502 U.S. 9, 9 (1991). Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Pierson v. Ray*, 386 U.S. 547, 554 (1967). *See also Woodworth v. Hulshof*, 891 F.3d 1083, 1090 (8th Cir. 2018) (stating that "judicial immunity is not overcome by allegations of bad faith or malice"). This immunity from § 1983 actions bars a plaintiff's recovery in all but two narrow sets of circumstances. *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012).

First, a judge does not have immunity for non-judicial actions. *Duty v. City of Springdale, Ark.*, 42 F.3d 460, 462 (8th Cir. 1994). "An act is a judicial act if it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity." *Birch v. Mazander*, 678 F.2d 754, 756 (8th Cir. 1982). The United States Court of Appeals for the Eighth Circuit has explained:

> The factors determining whether an act by a judge is a judicial one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity. In examining these factors, if only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a nonjudicial act, because an improper or erroneous act cannot be said to be normally performed by a judge. But if judicial immunity means anything, it means that a judge will not be deprived of immunity because the action he took was in error or was in excess of his authority. The relevant inquiry is the nature and function of the act, not the act itself. This means that to determine whether an act is judicial, courts look to the particular act's relation to the general function normally performed by a judge.

*Justice Network, Inc. v. Craighead Cty.*, 931 F.3d 753, 760 (8th Cir. 2019) (internal citations and

quotations omitted).

Second, a judge is not immune from lawsuits based on actions taken in the complete absence of jurisdiction. *Duty*, 42 F.3d at 462. This is the case even if the judge's actions were judicial in nature. *Schottel*, 687 F.3d at 373. In the context of judicial immunity, however, the scope of a judge's jurisdiction is construed broadly. *Justice Network, Inc.*, 931 F.3d at 762. "[A]n action – taken in the very aid of the judge's jurisdiction over a matter before him – cannot be said to have been taken in the absence of jurisdiction." *Mireles*, 502 U.S. at 13.

Here, plaintiff asserts that Judge Sutherland denied his "motion for modification of sentence" filed on April 17, 2006. He further accuses Judge Dalton of failing to have him transferred from Florida to Missouri for a probation revocation hearing; for keeping his case in warrant status; and for failing to discharge his probation. As previously stated, judicial immunity bars plaintiff's recovery under 42 U.S.C. § 1983 unless the judges' actions were non-judicial in nature, or were taken in the complete absence of jurisdiction.

Plaintiff has not demonstrated that the actions of Judge Sutherland and Judge Dalton were non-judicial. To the contrary, ruling on motions are acts normally performed by a judge. Moreover, in filing his motions, plaintiff was dealing with both judges in their judicial capacities. Plaintiff states that Judge Dalton should have released his detainer and discharged his probation based on *State ex rel. Zimmerman v. Dolan*, 514 S.W.3d 603 (Mo. 2017). However, as noted above, plaintiff's assertion that Judge Sutherland was in error does not defeat judicial immunity.

Plaintiff has also failed to demonstrate that either Judge Sutherland or Judge Dalton acted in the complete absence of jurisdiction. Indeed, plaintiff's allegations indicate that the actions of Judge Sutherland and Judge Dalton were taken in the aid of their jurisdiction of the matter before them. Therefore, judicial immunity is applicable to Judge Sutherland and Judge Dalton, and

plaintiff's claims against them must be dismissed.

## B. Claims Against Prosecutor Wright and Prosecutor Bartlett

Plaintiff's claims against Prosecutor Wright and Prosecutor Bartlett must be dismissed based on prosecutorial immunity. Prosecutors are immune from § 1983 liability so long as the actions complained of appear to be within the scope of prosecutorial duties. *Price v. Moody*, 677 F.2d 676, 677 (8th Cir. 1982). *See also Keating v. Martin*, 638 F.2d 1121, 1122 (8th Cir. 1980). The immunity enjoyed by prosecutors from § 1983 actions can be either absolute or qualified. *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996). A prosecutor is entitled to absolute immunity if he or she is acting as an advocate for the state in a criminal prosecution. *Id*. On the other hand, a prosecutor is entitled to only qualified immunity when he or she pursues actions in an "investigatory" or "administrative" capacity. *Id*.

"Absolute immunity protects prosecutors against claims arising from their initiation of a prosecution and presenting a criminal case insofar as that conduct is intimately associated with the judicial phase of the criminal process." *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016). This immunity depends on the functional nature of the prosecutor's activities; therefore, immunity is not defeated by "allegations of improper motive in the performance of prosecutorial functions." *Id*. Absolute immunity still applies even when there are allegations of malice, vindictiveness, or self-interest. *Reasonover v. City of St. Louis, Mo.*, 447 F.3d 569, 580 (8th Cir. 2006). Absolute immunity also "covers actions taken to initiate a prosecution, even if those actions are patently improper." *Saterdalen v. Spencer*, 725 F.3d 838, 842 (8th Cir. 2013).

Here, plaintiff provides no factual allegations that would indicate that Prosecutor Wright or Prosecutor Bartlett acted outside the scope of their prosecutorial duties. Rather, plaintiff states that Prosecutor Wright violated various constitutional rights when he filed a motion to revoke

plaintiff's probation and placed a detainer on him. However, these actions were undertaken while Prosecutor Wright was acting as an advocate for the state in a criminal prosecution. Thus, absolute immunity applies, and plaintiff's claims against Prosecutor Wright and Prosecutor Bartlett must be dismissed.

Even if Prosecutor Wright and Prosecutor Bartlett were not immune, plaintiff has still failed to state an official capacity claim against them. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Plaintiff alleges that both Prosecutor Wright and Prosecutor Bartlett are employed by Warren County. As such, an official capacity suit against Prosecutor Wright and Prosecutor Bartlett is actually a claim against Warren County itself.

To state a claim against a municipality, plaintiff must allege facts showing that the county had an unconstitutional policy or custom, or was deliberately indifferent in failing to train its employees. *See Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Plaintiff has made no attempt to establish such liability. Therefore, his official capacity claims against Prosecutor Wright and Prosecutor Bartlett are subject to dismissal for failure to state a claim. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

### C. Other Claims

In addition to his allegations regarding the handling of his probation case, plaintiff complains that when he was released from jail, he was discharged without proper clothing, and without any food or money. He states that the Warren County Sheriff's Office is responsible for allowing this to happen.

To the extent that plaintiff is attempting to sue the Warren County Sheriff's Office, such claim must fail because the sheriff's office is not a juridical entity, suable as such. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (stating that West Memphis Police Department and West Memphis Paramedic Services were "simply departments or subdivisions of the City government," and not suable entities); *Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (stating that "county jails are not legal entities amenable to suit"); and *De La Garza v. Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities). Furthermore, even if the claim is assumed to be against Warren County, plaintiff has not alleged any facts showing that his constitutional rights were violated due to a policy, custom, or failure to train on the part of the county. *See Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) (stating that liability against a municipality may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise"). Therefore, this claim must be dismissed.

Plaintiff also claims that while he was at the Warren County Jail, the Warren County Sheriff's Office deprived him of his HIV medications. As explained above, neither the Warren County Sheriff's Office nor the Warren County Jail is a distinctly suable entity. *See Ketchum*, 974 F.2d at 82; *Owens*, 328 F.3d at 1027. In addition, even assuming the allegation is against Warren

County itself, plaintiff has not stated a municipal liability claim. *See Mick*, 883 F.3d at 1079. Plaintiff does not name any other potential defendants with regard to his medication claim, nor does provide any allegations beyond the conclusory statement that the sheriff's office was "depriving" him of his medication. *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) ("Courts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level"). Therefore, this claim must be dismissed as well.

### D. Plaintiff's Motions for Notice of Inquiry

Plaintiff has filed two documents titled "Motion for Notice of Inquiry." (Docket No. 7; Docket No. 8 ). In the motions, plaintiff explains that he had filed a notice of change of address with the Court, and states that he was "wondering if [his] motion for notice of…change of address was…filed." The Court notes that plaintiff's notice of change of address was filed on October 9, 2019. As plaintiff does not appear to be seeking any type of relief, the motions will be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**. Pursuant to 28 U.S.C. § 1915(b)(4), the initial partial filing fee is waived.

**IT IS FURTHER ORDERED** that the institution having custody of plaintiff shall, whenever the amount in plaintiff's prison account exceeds $10.00, send monthly payments that equal 20 percent of the funds credited to the account the preceding month to the United States District Court for the Eastern District of Missouri Clerk's office, pursuant to 28 U.S.C. § 1915(b)(2), until the filing fee of $350 is paid in full.

**IT IS FURTHER ORDERED** that plaintiff's "Motion for Notice of Inquiry" and second "Motion for Notice of Inquiry" (Docket No. 7; Docket No. 8) are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this 13th day of January, 2020.

                HENRY EDWARD AUTREY
              UNITED STATES DISTRICT JUDGE